**FEDERATED MUTUAL INSURANCE CO., Appellant,**

v.

**CONCRETE UNITS, INC., Respondent,**

**Conger Construction Company, Respondent,**

**Brownsdale Cooperative Association, Respondent.**

**No. C8-83-309.**

Supreme Court of Minnesota.

March 8, 1985.

Rehearing Denied March 29, 1985.

Charles E. Spevacek, Minneapolis, for appellant.

Gary E. Leonard, Austin, for Concrete Units Inc.

Mark Carrigan, Glenco, for Conger Const. Co. Inc.

William A. Baudler, Austin, for Brownsdale Co-op. Assoc.

TODD, Justice.

Federated Mutual Insurance Co. (Federated) appeals from a declaratory judgment holding it obligated to defend and indemnify its insured, Concrete Units, Inc. (Concrete Units), against claims filed against the insured for allegedly supplying defective concrete. We affirm in part and reverse in part.

In 1979, the Brownsdale Cooperative Association (Brownsdale) hired the Conger Construction Company (Conger) to build a concrete grain elevator in Brownsdale, Minnesota. They agreed that Conger would assume complete control over the construction site and build the elevator on a "turnkey" basis. Conger, in turn, contracted with Concrete Units for the purchase of the concrete needed to construct the elevator. Concrete Units' only duty was to supply concrete, which it delivered in pre-mixed form to the construction site. That mix was not altered after delivery.

The elevator was to be built almost entirely out of concrete with only metal reinforcing rods and hoppers to be used in addition to the concrete supplied by Concrete Units. Conger was to build the elevator using "slip-form" construction which involves the use of forms into which concrete is poured. The forms are raised by hydraulic jacks as the concrete hardens and the process is then repeated until the structure reaches the height desired. The success of the slip-form construction method depends upon the ability to slip the forms over the hardening concrete so the next level can be poured.

On two occasions in July of 1979, Conger experienced problems with the concrete supplied by Concrete Units. On July 9th, the concrete hardened more rapidly than it was supposed to harden. As a result, the concrete adhered to the forms and Conger had to vibrate the forms in order to loosen them. This vibration created holes in the recently poured concrete walls which had to be repaired. In addition, some of the metal reinforcing rods and the slip-forms were damaged. Conger discontinued pouring concrete at the 20 foot level on July 9th because of these problems.

On July 24th, Conger resumed construction but again had problems with the concrete. On this occasion, the concrete "acted as a gummy mass" and holes opened in the wall after the forms were raised. Conger was thus forced to knock out the concrete poured because it was unusable and cease operations. In August 1979, Conger

had no problems with the concrete supplied by Concrete Units and the pouring was completed.

Both Brownsdale and Conger suffered losses as a result of the difficulties encountered in building the grain elevator and each sought recovery from Concrete Units. Although Brownsdale and Conger contended their losses were caused solely by defective concrete, Concrete Units denied responsibility for the problems they experienced.[1] Conger brought suit against Concrete Units for breach of contract, breach of warranty, and negligence. Conger claimed as damages:

    A. Expense or cost of repairs to it from the July 9 and July 24 pours.

    B. Extensive interest paid to borrow funds otherwise unnecessary but made so because a substantial portion of the contract payment due from Brownsdale was not made because of the damages and delay in the job completion.

    C. Loss of profits from similar work Conger could have performed had there been no delay in the Brownsdale job caused by defective concrete.

Claiming Conger had not paid the agreed price for the concrete it furnished, Concrete Units filed a mechanics' lien against Brownsdale's elevator and sued to enforce the lien. Brownsdale counterclaimed against Concrete Units for breach of warranty and negligence, alleging that it had lost the use of its elevator because of the construction delays. Brownsdale claimed the following damages:

    A. The piling of 30,000 bushels of corn at 10 cents per bushel.

    B. The loss of one month's use of storage space that would otherwise have been available: 220,000 bushels of corn at 2 cents per bushel.

    C. The inability to dry 8,000 bushels of corn per day for 24 days at 10 cents per bushel.

After these claims were filed, Federated brought an action for a declaratory judgment to define its obligations under the insurance policy it had issued to Concrete Units. Specifically, Federated sought a determination that it had no duty either to defend Concrete Units against Conger and Brownsdale's claims or to indemnify Concrete Units if Concrete Units was found liable for supplying defective concrete.

At all relevant times, Concrete Units was insured under a comprehensive general liability policy issued by Federated. That policy contains the following general grant of coverage:

COVERAGE B—PROPERTY DAMAGE LIABILITY

The company will pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as damages because of

    \*      \*      \*      \*      \*      \*

    B. **property damage**

to which this insurance applies, caused by an **occurrence**, and the company shall have the right and duty to defend any suit against the **insured** seeking damages on account of ... **property damage**, even if any of the allegations of the suit are groundless, false or fraudulent ..."

"Property damage" is defined in the policy as:

    (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an **occurrence** during the policy period; \* \* \*.

"Occurrence" is defined in the policy as: an accident, including continuous or repeated exposure to conditions, which re-

---

**1.** After this appeal was filed, Federated and Concrete Units agreed to jointly settle the claims against Concrete Units. They continue to dispute the extent of Federated's obligations under the insurance policy, therefore this appeal is not moot. Since the settlement agreement with Brownsdale and Conger is not a part of the record, we must base our discussion of Federated's obligation to indemnify Concrete Units upon the claims of Brownsdale and Conger as presented in their respective counterclaim and complaint against Concrete Units.

sults in **bodily injury** or **property damage** neither expected nor intended from the standpoint of the insured; * * *.

The general grant of coverage is limited by the following relevant exclusions:

This insurance does not apply:

\* \* \* \* \* \*

(k) to **property damage** to

(1) property owned or occupied by or rented to the **insured,**

(2) property used by the **insured,** or

(3) property in the care, custody or control of the **insured** or as to which the **insured** is for any purpose exercising physical control, but parts (2) and (3) of this exclusion do not apply with respect to liability under a written sidetrack agreement and part (3) of this exclusion does not apply with respect to **property damage** other than to **elevators** arising out of the use of an **elevator** at premises owned by, rented to or controlled by the **named insured;**

\* \* \* \* \* \*

(m) to loss of use of tangible property which has not been physically injured or destroyed resulting from

(1) a delay in or lack of performance by or on behalf of the **named insured** of any contract or agreement, or

(2) the failure of the **named insured's products** or work performed by or on behalf of the **named insured** to meet the level of performance, quality, fitness or durability warranted or represented by the **named insured;** but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the **named insured's products** or work performed by or on behalf of the **named insured** after such products or work have been put to use by any person or organization other than an **insured;**

(n) to **property damage** to the **named insured's products** arising out of such products or any part of such products;

(*o*) to **property damage** to work performed by or on behalf of the **named insured** arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

On appeal, Federated maintains the trial court erred in concluding that: "Federated owes Concrete both the obligation to defend as well as the obligation to indemnify with respect to the Conger and Brownsdale claims."

The comprehensive general liability policy (CGL policy) issued to Concrete Units requires Federated "to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of * * * property damage." Since exclusion (n) excludes coverage for damage to the concrete itself, Federated must defend and indemnify Concrete Units only if there has been other "property damage" as that term is defined in the policy. Federated argues that neither Conger's complaint nor Brownsdale's counterclaim against Concrete Units seeks recovery for losses based on other "property damage." Federated also contends that the trial court improperly relied on our decision in *Hauenstein v. Saint Paul-Mercury Indem. Co.,* 242 Minn. 354, 65 N.W.2d 122 (1954) to find that the grain elevator itself was damaged by incorporation of the defective concrete. If both of these assertions are correct, Federated is entitled to the declaratory judgment it seeks.

*Hauenstein,* like the present case, involved a dispute between an insurance carrier and its insured over the coverage provided under an insurance policy for losses sustained when the insured supplied a defective product to a building contractor. In *Hauenstein,* the insured sold plaster which proved defective after it was applied to the walls and ceilings of a hospital. Although the insurer claimed that no property other than the plaster itself had been damaged, Justice Matson explained:

No one can reasonably contend that the application of , a useless plaster, which has to be removed before the walls

can be properly replastered, does not lower the market value of a building. Although the injury to the walls and ceilings can be rectified by removal of the defective plaster, nevertheless, the presence of the defective plaster on the walls and ceilings reduced the value of the building and constituted property damage. The measure of damages is the diminution in the market value of the building, or the cost of removing the defective plaster and restoring the building to its former condition plus any loss from deprival of use, whichever is the lesser.

*Id.* at 358, 65 N.W.2d at 125 (footnote omitted).

■ Applying *Hauenstein* to the facts in the present case, the trial court concluded that the grain elevator was damaged by incorporation of the defective concrete and the measure of that damage was the resulting diminution in the market value of the elevator. The trial court's reliance on *Hauenstein,* however, was misplaced. In *Hauenstein,* this court was considering a CGL policy much different than the policy which is now before us. As Justice Matson observed, the issue in *Hauenstein* was whether there was "liability for accidental damage to property *within the meaning of the policy*" before the court. *Id.* at 356, N.W.2d at 124 (emphasis supplied).

■ The policy considered in *Hauenstein* was a pre-1966 revision CGL policy, whereas the policy we now consider is a CGL policy as revised in 1973.[2] The two policies differ significantly in that the former provides coverage for "damages because of injury to or destruction of property, including the loss of use thereof," while

the latter provides coverage for "damages because of * * * property damage" and defines "property damage" as either:

(1) *physical* injury to or destruction of *tangible* property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, and (2) loss of use of *tangible* property which has not been *physically* injured or destroyed provided such loss of use is caused by an **occurrence** during the policy period.

(emphasis supplied). Although the "diminution in value" of property caused by the incorporation of a defective component product may constitute "injury to * * * property" under the pre-1966 revision CGL policy (a point we need not reconsider on the present facts), we conclude that "diminution in value" is not "property damage" when defined as either *"physical* injury to * * * *tangible* property" or as "loss of use of *tangible* property."

Having determined that the trial court erred in deciding that diminution in value constitutes "property damage" under the present policy, we must now consider whether either Brownsdale or Conger's claims are based on "property damage" which satisfies either of the policy's definitions.

■ Brownsdale lost the use of its grain elevator because of the construction delays caused by the defective concrete and each of the three items of damage alleged in its claim against Concrete Units is based on lost use of the elevator.[3] Since lost use of tangible property is explicitly defined in the policy as "property damage" and since none of the policy exclusions apply,[4] Feder-

**2.** *See* Note, *Liability Coverage for "Damages Because of Property Damage" Under the Comprehensive General Liability Policy,* 68 Minn.L.Rev. 795, 801–13 (1984).

**3.** Although the trial court relied heavily on *Hauenstein* and the concept of "diminution in value," it specifically found that Brownsdale lost the use of its elevator because of the defective concrete and that this lost use of property was "property damage" as defined in the policy. The trial court also found that both Brownsdale

and Conger's claims arose from the lost use of the elevator.

**4.** Exclusion (k) does not apply because once Concrete Units delivered the concrete to Conger, the concrete was no longer under the "care, custody or control" of the insured; nor was it thereafter "owned" or "used" by the insured.

Exclusion (m) could apply because it excludes coverage for:

ated must defend and indemnify Concrete Units against Brownsdale's claim.

◼ Although the trial court concluded that Federated is also obligated to defend and indemnify Concrete Units against Conger's claim, only damage item A in Conger's complaint ("Expense or cost of repairs to it from the July 9 and July 24 pours") constitutes, even partially, a claim for "property damage" as that term is defined in the policy. The testimony at trial reveals that some of the mental reinforcing rods were damaged as a result of the defective concrete. The testimony further discloses that while some of the rods were damaged beyond reuse, Conger was able to repair others and reuse them. Roger Curtis, Conger's owner, also testified that because of the problems with the concrete, Conger's slip-forms had to be releveled. Insofar as damage item A represents the cost of replacing the metal reinforcing rods or the cost of repairing the reinforcing rods and releveling the slip-forms, Federated is obligated to indemnify Concrete Units against Conger's claim.

◼ Under the terms of the policy, Federated may also become obligated to defend and indemnify its insured against claims for consequential damages since Federated is required "to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as *damages because of * * * property damage.*" We conclude that the most sensible reading of the underscored phrase, "damages because of * * * property damage," requires the insurer to pay all damages which are causally related to an item of "property damage" which satisfies either of the policy's definitions.

◼ As we have already decided that "diminution in value" of property is not "property damage" as defined in this policy, Conger's claims must be causally related to either (1) the lost use of the elevator, (2) the damaged reinforcing rods, or (3) the damaged slip-forms. The cost of replacing the defective concrete (an element of damage item A) is not causally related to any of these three items of property damage. Although the trial court concluded that all of Conger's damages arose from the lost use of the elevator, we disagree. Damage items B (interest expense) and C (lost profits) are simply too tenuously related to Brownsdale's lost use of the elevator to be recoverable as consequential damages. Neither are these items causally related to the damaged reinforcing rods or slip-forms. Since Conger's claim against Concrete Units, however, allege some damages for which Federated must indemnify Concrete Units, Federated is obligated under the terms of the policy to defend Concrete Units against Conger's claim. *See, e.g., Prahm v. Rupp Const. Co.,* 277 N.W.2d 389 (Minn.1979).

We hereby direct the trial court on remand to award Concrete Units damages to be paid by Federated in the amount of the reasonable attorneys fees and costs incurred by Concrete Units in defending against both the declaratory judgment action and this appeal. *See Lanoue v. Fire-*

---

loss of use of tangible property which has not been physically injured or destroyed resulting from

* * * * * *

(2) the failure of the named insured's products or work performed by or on behalf of the named insured to meet the level of performance, quality, fitness or durability warranted or represented by the named insured

However, (m)(2) continues:

but this exclusion does not apply to loss of use of other tangible property *resulting from the sudden and accidental physical injury to* or destruction of *the named insured's products* or work performed by or on behalf of the named insured after such products or work have

been put to use by any person or organization other than an insured. (emphasis supplied)

Since we conclude that the lost use of the elevator resulted from "sudden and accidental physical injury" to the concrete, exclusion (m) does not apply. *See Bituminous Casualty Corp. v. Bartlett,* 307 Minn. 72, 77–79, 240 N.W.2d 310, 312–14 (1976) (for a discussion of the term "accident" as used in liability insurance policies).

Exclusions (n) and (o) are also inapplicable because although they exclude coverage for property damage to the insured's product, Brownsdale's claims are for the lost use of its elevator.

*man's Fund Am. Ins. Co.*, 278 N.W.2d 49, 54–55 (Minn.1979).

Affirmed in part, reversed in part and remanded.

COYNE, J., took no part in the consideration or decision of this case.