HAWAIIAN INSURANCE & GUARANTY COMPANY, LIMITED, Plaintiff-Appellee, *v.* BLAIR, LTD., Defendant-Appellant, and KUKUI NUTS OF HAWAII, INC., Defendant-Appellee, and POMARE, LTD. and JOHN DOES 1 through 20, Defendants

NO. 11093

(CIVIL NO. 85-0195)

OCTOBER 17, 1986

BURNS, C.J., HEEN AND TANAKA, JJ.

448

OPINION OF THE COURT BY TANAKA, J.

Defendant Blair, Ltd. (Blair), the insured under a comprehensive general liability insurance policy (Policy) issued by plaintiff Hawaiian Insurance & Guaranty Company, Limited (HIG), the insurer, appeals from the declaratory judgment holding that HIG is not obligated to defend and indemnify Blair under the Policy against the claims of defendant Kukui Nuts of Hawaii, Inc. (KNH). We affirm.

I.

On September 13, 1984, KNH filed a 22-count complaint (Complaint) containing 131 paragraphs of allegations against Blair and eleven other named defendants.[1] The Complaint alleged that KNH was successfully engaged in the business of manufacturing and selling leis and jewelry made from Hawaiian kukui[2] nuts, that the defendants imported and sold "fake" Hawaiian kukui nut leis and jewelry "made from tung nuts grown apparently in Taiwan[,]" and that the importation and sale of such fakes "drove" KNH into a reorganization proceeding under chapter 11[3] of the Bankruptcy Code in May of 1984.

---

[1] See Kukui Nuts of Hawaii, Inc. v. R. Baird & Co., Inc., 6 Haw. App. ___, 726 P.2d 268 (1986).

[2] Kukui is the "[c]andlenut tree (Aleurites moluccana), a large tree in the spurge family bearing nuts containing white, oily kernels which were formerly used for lights[.]" M. Pukui & S. Elbert, Hawaiian Dictionary (1986).

[3] 11 U.S.C. §§ 1101, et seq. (1982 & Supp. 1 1983).

Blair tendered the defense of the KNH lawsuit to HIG. On January 14, 1985, HIG commenced this action against Blair and KNH[4] seeking a declaratory judgment that it had no obligation to defend and indemnify Blair under the Policy. Blair counterclaimed alleging that HIG breached the Policy, breached an implied covenant of good faith and fair dealing under the Policy, breached its fiduciary duty as insurer, and engaged in "unfair claim settlement practices."

Both HIG and Blair moved for summary judgment. On November 27, 1985, the lower court granted HIG's motion and denied Blair's motion. After the entry of a declaratory judgment, Blair appealed.

II.

Since the insurer's duty to defend its insured is contractual in nature, to determine the scope of such duty, we must first look at the language of the particular policy involved. *First Insurance Co. of Hawaii, Inc. v. State*, 66 Haw. 413, 665 P.2d 648 (1983). Here, the pertinent language in the Policy reads:

[T]he company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent[.]

Thus, "the duty to defend is broader than the duty to pay[,]" *Id.* 66 Haw. at 417, 665 P.2d at 652, and "where a suit raises a potential for indemnification liability of the insurer to the insured, the insurer has a duty to accept the defense of the entire suit even though other claims of the complaint fall outside of the policy's coverage." *Id.* Thus, "'the insurer is obligated to provide a defense against the allegations of covered as well as the non-covered claims.'" *Id.* 66 Haw. at 418, 665 P.2d at 652 (quoting 7C J. Appleman, *Insurance Law and Practice* § 4684.01 at 106 (Berdal ed. 1979)).

Conversely, "where pleadings fail to allege any basis for recovery within the coverage clause the insurer has no obligation to defend." 7C J. Appleman, *Insurance Law and Practice*, § 4684.01 at 91 (Berdal ed.

---

[4]Pomare, Ltd., a purchaser "for resale" of items from Blair, Ltd., was also a named defendant. However, it was dismissed from the case.

1979). *See Sturla, Inc. v. Fireman's Fund Insurance Co.*, 67 Haw. 203, 684 P.2d 960 (1984).

Like the circuit court, we believe that KNH's allegations in the Complaint fail to show any liability or loss covered by the Policy. In other words, the bases of Blair's liability and KNH's damages averred in the Complaint are not risks HIG undertook to protect under the Policy. Consequently, we hold that the circuit court properly declared that HIG had no duty to defend or to indemnify Blair.

### A.

Blair contends paragraph 128 of the Complaint raised a potential claim of "property damage" as defined in the Policy and, therefore, HIG had a duty to defend.

Paragraph 128 alleges:

Defendants and each of them have further damaged the value of Plaintiff's product line, trademark(s), tradename(s) and the reputation and good will of Plaintiff in the Community and in the public mind.

The Policy provides coverage for "property damage" caused by an "occurrence" and contains the following definitions:

"Occurrence" means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured;

\* \* \*

"property damage" means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period[.]

Blair starts with the premise that KNH's "product line" is "tangible property" consisting of "the stock of things produced by KNH, or KNH's 'products.'" Although the Complaint does not allege any "physical injury" to KNH's product line, Blair claims there was "loss of use" of the product line, contending that "diminution in value" constitutes "loss of use." Blair concludes its thesis by asserting that since it "did not intend

to cause the damages alleged by KNH," there was an "occurrence."

For the purpose of this opinion, we assume, but do not decide, that the "product line" is "tangible property" and that there was an "occurrence." We do not agree with Blair, however, that there was a "loss of use" of KNH's product line. There is no allegation in the Complaint that KNH was deprived of the actual use of its products at any time. And we do not agree that damage to the "value of KNH's product line" constitutes "loss of use" under the facts of this case.

In support of its contention that "diminution in value" constitutes "loss of use," Blair relies on four cases. Based on our analysis, however, we believe that Blair's reliance on those cases was misplaced.

Contrary to Blair's representation, *Missouri Terrazzo Co. v. Iowa National Mutual Insurance Co.,* 566 F. Supp. 546 (E.D. Mo. 1983), *aff'd,* 740 F.2d 647 (8th Cir. 1984), involved physical injury to tangible property, not intangible losses to tangible property.[5] In *Missouri Terrazzo,* the underlying claim was based on the alleged improper construction of a terrazzo floor by the insured resulting in the diminution of value to the building. The court of appeals stated:

> Here, the physical damage to tangible property, i.e., the physical deterioration of the floor, is manifest. We agree with Missouri Terrazzo that the diminution in value in this case is "merely a means of measuring the damage sustained as a result of the property damage."

740 F.2d at 650.[6]

Blair also relies on a California case, *Economy Lumber Co. of Oakland, Inc. v. Insurance Company of North America,* 157 Cal. App. 3d 641, 204 Cal. Rptr. 135 (1984), and two Illinois cases, *Pittway Corp. v. American Motorist Insurance Co.,* 56 Ill. App. 3d 338, 370 N.E.2d 1271 (1977), and *CMO Graphics, Inc. v. CNA Insurance,* 115 Ill. App.

---

[5]In relying on *Missouri Terrazzo Co. v. Iowa National Mutual Insurance Co.* in its opening brief, Blair set forth the citation for the district court's opinion only and quoted from it. The omission of the citation for the court of appeal's opinion evidences either dishonesty or incompetence on the part of Blair's counsel.

[6]In a case similar to the facts in *Missouri Terrazzo,* the Hawaii Supreme Court held that the insurer had no duty to defend or to indemnify the insured. *Sturla, Inc. v. Fireman's Fund Insurance Co.,* 67 Haw. 203, 684 P.2d 960 (1984) (The insured, a distributor of carpet products, supplied defective carpeting which was installed in a condominium hotel project.)

3d 491, 450 N.E.2d 860 (1983). *Economy Lumber* dealt with issues on the meaning of "occurrence" as applied to the facts of the case and the applicability of a policy exclusion regarding damage to other property caused by the insured's product. Thus, *Economy Lumber* is not on point.

In *Pittway,* where the insured's defective valve assemblies were incorporated into aerosol cans filled with hair spray, the claimants alleged damage to the completed product (aerosol cans). The court stated:

> [T]he term "property damage" includes tangible property which has been diminished in value or made useless irrespective of any actual physical injury to the tangible property.

> \* \* \*

> [T]he damage to the completed product exclusive of the value of the defective product furnished by Pittway amounts to damage to tangible personal property within the terms of the policy.

*Id.* 56 Ill. App. 3d at 341, 370 N.E.2d at 1274. However, the insured was denied coverage based on a policy exclusion and the insured's failure to give the insurer timely notice. In *CMO Graphics,* the court accepted the *Pittway* court's construction of "property damage" and indicated that had the third party alleged "damage caused to its products or . . . diminution in market value of its products[,]" there would have been coverage under the policy. *Id.* 115 Ill. App. 3d at 492, 450 N.E.2d at 864.

Blair argues that *Pittway* involved an earlier standard form of policy which "more restrictive[ly]" required damages for loss of use to result from "injury to or destruction of tangible property."[7] Since property damage under the Policy in this case encompasses "loss of use of tangible property which has not been physically injured or destroyed[,]" Blair contends that "the *Pittway* analysis makes clear that a diminution

---

[7]In *Pittway Corp. v. American Motorist Insurance Co.,* 56 Ill. App. 3d 338, 370 N.E.2d 1271 (1977), the policy defined "damages" and "property damages" as follows:

"[D]amages" includes damages \* \* \* for loss of use of property resulting from property damage;

\* \* \*

"[P]roperty damage" means injury to or destruction of tangible property.

to the value of tangible property constitutes a 'loss of use.'" However, in the recent case of *Federated Mutual Insurance Co. v. Concrete Units, Inc.,* 363 N.W.2d 751 (Minn. 1985), which involved a policy containing the same definition of "property damage" as in the Policy, the Minnesota Supreme Court refuted this argument by stating:

> [W]e conclude that "diminution in value" is not "property damage" when defined as either "*physical* injury to * * * *tangible* property" or as "loss of use of *tangible* property."

*Id.* 363 N.W.2d at 756 (emphasis in original). The court distinguished *Hauenstein v. Saint Paul-Mercury Indemnity Co.,* 242 Minn. 354, 65 N.W.2d 122 (1954), which had held similarly to *Pittway,*[8] by stating:

> The policy considered in *Hauenstein* was pre-1966 revision CGL policy, whereas the policy we now consider is a CGL policy as revised in 1973.

*Federated Mutual Insurance Co.,* 363 N.W.2d at 756.

We note that in the four cases cited by Blair and other similar cases, e.g., *Western Casualty and Surety Co. v. Polar Panel Co.,* 457 F.2d 957 (8th Cir. 1972); *Geddes & Smith, Inc. v. Saint Paul-Mercury Indemnity Co.,* 51 Cal. 2d 558, 334 P.2d 881 (1959); and *Sola Basic Industries, Inc. v. United States Fidelity & Guaranty Co.,* 90 Wis. 2d 641, 280 N.W.2d 211 (1979), (1) there was a contractual relationship between the third party claimant and the insured who was a contractor, subcontractor, or supplier; (2) the insured's defective product was incorporated into the claimant's end product be it a building, industrial product, or installation; and (3) the insured's incorporated product "damaged" the claimant's end product. In this case, there was no contractual relationship between KNH and Blair and no product of Blair was incorporated into KNH's "product line." Thus, those cases are neither factually nor legally on point.

In essence, this case is akin to *L. Ray Packing Co. v. Commercial Union Insurance Co.,* 469 A.2d 832 (Me. 1983), where the insured sought to have the insurer defend an antitrust lawsuit commenced by fourteen fishermen. The insured contended that "the inability to sell the

---

[8] *Pittway* cites and relies on *Hauenstein v. St. Paul-Mercury Indemnity Co.,* 242 Minn. 354, 65 N.W.2d 122 (1954). *See* 56 Ill. App. 3d at 341, 370 N.E.2d at 1274.

herring in a free market is a loss of use of the herring[,]" but the court held that "the alleged damage can be characterized only as loss of profits[.]" *Id.* at 835, 836. Likewise, KNH's allegation of damage to the value of its product line really is an allegation of loss of profits which the Policy does not cover.

We hold that as applied to the facts in this case, "diminution in value" does not constitute "loss of use" within the meaning of the Policy provision.

### B.

Blair also contends the allegations in the Complaint infer trade libel or disparagement which constitutes a "personal injury" claim under the Policy and require HIG to defend.

Regarding coverage for personal injury liability, the Policy provides in part:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury (herein called "personal injury") sustained by any person or organization and arising out of one or more of the following offenses committed in the conduct of the named insured's business:

> \* \* \*

> Group B - the publication or utterance of a libel or slander or of other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy; except publications or utterances in the course of or related to advertising, broadcasting or telecasting activities conducted by or on behalf of the named insured[.]

Trade libel or disparagement[9] means "the publication of matter disparaging the quality of another's land, chattels or intangible things, that the publisher should recognize as likely to result in pecuniary loss to the other through the conduct of a third person in respect to the other's interests in the property." Restatement (Second) of Torts § 626 (1977).

---

[9]Trade libel or disparagement falls in the category of torts designated as "injurious falsehood" rather than "defamation." *See* Restatement (Second) of Torts §§ 623A *et seq.* (1977); W. Prosser & W. Keeton, *The Law of Torts* § 128 (5th ed. 1984).

At a minimum, a claim for trade libel or disparagement requires "(1) a publication; (2) which induces others not to deal with plaintiff; and (3) special damages." *Nichols v. Great American Insurance Companies,* 169 Cal. App. 3d 766, 773, 215 Cal. Rptr. 416, 420 (1985). HIG contends that KNH's Complaint does not allege or imply any disparaging publication.[10]

Count XII of the Complaint alleges that Blair and the other defendants "have passed off and/or palmed off their products as being those of [KNH] or substantially identical to those of [KNH]." Blair argues that the count XII allegations "specifically state disparagement." However, Blair has not submitted, and our research has not located, any case holding that "passing off" or "palming off" an inferior product for a better product constitutes publication in an alleged trade libel or disparagement case. Such practice may constitute unfair competition. *See Singer Mfg. Co. v. Redlich,* 109 F. Supp. 623 (S.D. Cal. 1952).

Moreover, if the count XII allegations reasonably infer publication because "passing off" or "palming off" entails communication to the buyers or prospective buyers of Blair's products, the communication constitutes "advertising" which is excepted from coverage under the Policy. Communications "made in the context of attempting to induce people to buy [the insured's] products . . . fall within the realm of *advertising*" and "are excluded from coverage[.]" *Nichols,* 169 Cal. App. 3d at 775, 215 Cal. Rptr. at 421 (emphasis in original).

Accordingly, there was no coverage under the personal injury liability provisions of the Policy and HIG had no duty to defend.

III.

Citing Hawaii Revised Statutes (HRS) § 431-455 (1985),[11] Blair

---

[10]"Publication of an injurious falsehood is its communication intentionally or by a negligent act to someone other than the person whose interest is affected." Restatement (Second) of Torts § 630 (1977).

[11]Hawaii Revised Statutes § 431-455 provides:

Policyholder and other suits against insurer. Where an insurer has contested its liability under a policy and is ordered by the courts to pay benefits under the policy, the policyholder, the beneficiary under a policy, or the person who has acquired the rights to the policyholder or the beneficiary under the policy shall be awarded, in addition to the benefits under the policy, reasonable attorney's fees together with costs of suit.

asserts it is entitled to recover attorney's fees and costs because "HIG has contested its liability under its policy to provide Blair a defense in the KNH lawsuit." This assertion is without basis. Under HRS § 431-455 an insurer's liability for the insured's attorney's fees and costs arises only when it is ordered to pay policy benefits. HIG has not been ordered to pay benefits under the Policy.

We find no merit in Blair's other contentions and do not choose to discuss them.

Affirmed.

*Robert J. Smolenski* (*James W. Kaywell* with him on the briefs; *Smolenski & Wooddell,* of counsel) for defendant-appellant.

*Lex R. Smith* (*Bert T. Kobayashi, Jr.* and *John T. Komeiji* with him on the brief; *Kobayashi, Watanabe, Sugita & Kawashima,* of counsel) for plaintiff-appellee.