HARTFORD ACCIDENT & INDEMNITY COMPANY and Hartford Fire Insurance Company, Plaintiffs–Appellants,

v.

PACIFIC MUTUAL LIFE INSURANCE COMPANY, Defendant–Appellee.

No. 85–2511.

United States Court of Appeals, Tenth Circuit.

Nov. 16, 1988.

---

Edwin F. Garrison and E. Bay Mitchell, III, Looney, Nichols, Johnson & Hayes, Oklahoma City, Okl., for plaintiffs-appellants.

Page Dobson, Holloway, Dobson, Hudson and Bachman and William C. McAlister, Pate & Payne, P.C., Oklahoma City, Okl., for defendant-appellee.

Before SEYMOUR, MOORE and BALDOCK, Circuit Judges.

SEYMOUR, Circuit Judge.

Hartford Accident & Indemnity Company and Hartford Fire Insurance Company (Hartford) brought this declaratory judgment action to ascertain the applicability of two comprehensive general liability policies Hartford had issued to Campbell Glass & Mirror Company (Campbell). The district court determined that the policies provided complete coverage to Campbell. We affirm in part, reverse in part, and remand for further proceedings.[1]

---

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R. App.P. 34(a); 10th Cir.R. 34.1.8. The cause is

## I.

The stipulated facts submitted by the parties establish that Campbell, working as a sub-contractor, furnished and installed a reflective, insulated glass curtain wall system on a building under construction. This system consisted of an aluminum framework anchored to the concrete floor slabs, insulated glass, vision panels, and spandrel panels. Because it constituted the exterior wall, the system was an integral part of the building. The system as installed was deficient and defective in that the window units cracked and broke, and the insulated glass units and reflective coating surfaces deteriorated. As a result of these problems, parts of the building suffered physical damage. This damage included cracks and breaks in the concrete floor slabs around the wall anchors and damage due to water leakage. Pacific Mutual, then the building owner, undertook a major restoration to correct the problems caused by the defects, including removal of some parts of the original system and installation of a replacement wall curtain outside the defective one.

Pacific Mutual brought a diversity action against the manufacturer of the insulated windows and spandrel units, the manufacturer of the aluminum frames, the general contractor, and Campbell. It alleged that Campbell, as a supplier, breached implied warranties of merchantability and fitness for a particular use, and negligently installed the system. Pacific Mutual sought to recover $1,200,000 as the cost of replacing the entire system, $80,000 as the cost of interim replacements of defective glass panels, and other expenses incidental to replacing the system. During the course of this litigation, the other defendants were either dismissed or reached settlement agreements, leaving Campbell, which had become bankrupt, as the only remaining defendant.

Hartford insured Campbell under two comprehensive general liability insurance policies, an SMP policy which furnished insurance in the amount of $100,000, and an umbrella policy which provided excess coverage up to $2,000,000. Both policies apply to sums Campbell became legally obligated to pay because of property damage to which the insurance applies, and both policies contain identically worded exclusions. Hartford seeks a determination that the policies do not apply to the damages claimed by Pacific Mutual.

The district court held that the policies cover all of the damages claimed by Pacific Mutual, concluding that

> "[t]he damage a defective integral part causes to the whole is measured by the diminution of the market value of the building, or the cost of removing the defective product and restoring the building to its former condition plus any loss from the deprivation of use, whichever is the lesser."

Rec., vol. I, doc. 2, at 7. In so determining, however, the court relied on cases that construe general comprehensive liability policies materially different from those at issue here.

A comprehensive general liability policy (CGLP) "is a standardized liability policy promulgated by a group of organizations including the United States's leading insurance companies." Note, *Liability Coverage for "Damages Because of Property Damage" Under the Comprehensive General Liability Policy*, 68 Minn.L.Rev. 795, 798 (1984); *see also* Tinker, *Comprehensive General Liability Insurance— Perspective & Overview*, 25 Fed'n Ins. Couns.Q. 217, 218–19 (1975). The standard policy provisions were revised in 1943, 1955, 1966, and 1973. Because of these revisions in policy language, and because a particular policy may deviate from the language of the standard form, cases construing policy coverage are not authoritative if they do not involve the same language or the same version of the standard form embodied in the policy under consideration. *See id.* at 219; *see also Federated Mutual Ins. Co. v. Concrete Units, Inc.*, 363 N.W. 2d 751, 756 (Minn.1985) (distinguishing earlier case involving different revision of insurance policy).

therefore ordered submitted without oral argument.

Coverage under a CGLP is not intended to extend to ordinary "business risks," such as those relating "to the repair or replacement of faulty work or products." Tinker, Fed'n Ins.Couns.Q. at 224; *see Gulf Mississippi Marine Corp. v. George Engine Co.,* 697 F.2d 668, 670 (5th Cir.1983); *Indiana Ins. Co. v. DeZutti,* 408 N.E.2d 1275, 1279 (Ind.1980). The policy is not intended to serve as a performance bond or a guaranty of goods or services. *See id.* Its purpose is to protect the insured from liability for damages to property *other than his own work or property* that is caused by the insured's defective work or product. *See Indiana Ins. Co.,* 408 N.E.2d at 1278; Henderson, *Insurance Protection for Products Liability & Completed Operations—What Every Lawyer Should Know,* 50 Neb.L.Rev. 415, 441 (1971).

In general, "[C]ontracts of insurance will be liberally construed in favor of the objects to be accomplished, and if provisions of a policy are capable of being construed in two ways, that interpretation should be placed on such provisions which is most favorable to the insured." *Catts Co. v. Gulf Ins. Co.,* 723 F.2d 1494, 1500–01 (10th Cir.1983). "An insurance policy's words of exclusion are to be narrowly viewed." *An-Son Corp. v. Holland–America Ins. Co.,* 767 F.2d 700, 703 (10th Cir.1985); *accord Conner v. Transamerica Ins. Co.,* 496 P.2d 770, 774 (Okla.1972). Although, as we stated above, both policies at issue in this case contain virtually identical statements of coverage and of exclusions, the policies differ in their definition of property damage. Because this difference is critical to the issue of coverage, we discuss the applicability of each policy individually.

## II.

The $100,000 SMP policy states that Hartford "will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of ... property damage to which this insurance applies." Rec., supp.vol. I, doc. 1, ex. A, at 7. The policy excludes "property damage to the named insured's products arising out of such products or any part of such products," and "property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith." *Id.* Although it is not included in the record on appeal, Hartford concedes that "[t]he SMP policy defines 'property damage' as 'injury to or destruction of tangible property.' " Brief of Appellant at 8.

Courts and commentators generally agree that this definition of property damage, which is the definition used in the pre–1973 version of the CGLP, is broad enough to include diminution in value. *See, e.g., McDowell–Wellman Engineering Co. v. Hartford Accident & Indemnity Co.,* 711 F.2d 521, 525 n. 7 (3rd Cir.1983) (citing cases); *see generally* Note, 68 Minn. L.Rev. at 809–13. Nonetheless, the policy here specifically excludes coverage for property damage to the insured's products and work, and materials furnished in connection therewith. Courts that have found coverage for the diminution in value of the property incorporating the insured's defective work or product have given effect to such exclusions by limiting coverage to the amount of diminution in excess of the cost of replacing the products and/or work of the insured. In *Goodyear Rubber & Supply Co. v. Great American Ins. Co.,* 471 F.2d 1343 (9th Cir.1973), the insured had fabricated and sold gaskets which the buyer installed on a ship. When the gaskets failed, the buyer sued the insured, who had CGLP coverage essentially identical to the SMP policy here. The court found coverage for the asserted diminution in value of the ship in excess of the value of the defective product. Likewise in *Hauenstein v. Saint Paul–Mercury Indemnity Co.,* 242 Minn. 354, 65 N.W.2d 122 (1954), when the insured distributed plaster that became defective after being applied by purchasers, the court held that the value of the plaster itself was excluded from coverage. *See also* Note, 68 Minn.L.Rev. at 804 n. 47, 810 n. 77. In the instant case, Campbell both furnished and installed the defective cur-

tain wall.[2] Under the provisions excluding coverage for work performed by and products furnished by the insured, the SMP policy therefore would only provide coverage for the diminution in value of the building, if any, in excess of the cost of replacing the curtain wall.

The district court determined that the diminution in value should not be reduced by the cost of re-installation, relying primarily on *Hauenstein*, 65 N.W.2d at 125. In *Hauenstein*, however, the insured supplied the defective product but did *not* install it. Accordingly, the court there found that the cost of the product was excluded but the cost of the labor required to replace the product, which was not work which had been performed by the insured, was not excluded. Here, to the contrary, the alleged defective installation, which was asserted as a cause of the damage, was performed by the insured. Under the provision excluding coverage for property damage to work performed by or on behalf of the insured, Hartford is not liable for the cost of the labor involved in replacement and re-installation. *See Gulf Mississippi Marine*, 697 F.2d at 673. The district court also erred in holding that the diminution in value should not be reduced by the value of the replacement materials. These costs are clearly encompassed by the exclusions applicable to the insured's products and to materials furnished in connection with work performed by the insured. *See Hauenstein*, 65 N.W.2d at 125, 126; *see generally* Tinker, 25 Fed'n Ins.Couns.Q. at 225–26; Note, 68 Minn.L.Rev. at 804 n. 47, 810 n. 77.

In sum, we conclude that the SMP policy provides coverage for diminution in value of the building in excess of the cost of replacements and the cost of installation. We remand for further proceedings on the extent, if any, to which such diminution in value exists.

### III.

The $2,000,000 umbrella policy provides excess coverage because of property damage to which the insurance applies, and contains exclusions for property damage to the insured's products, work, and materials furnished therewith that are virtually identical to the corresponding SMP provisions discussed above. Unlike the SMP policy, however, the umbrella policy defines property damage as "(1) *physical* injury to or destruction of tangible property which occurs during the policy period ..., or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period." Rec., supp. vol. I, doc. 1, ex. B, at 6 (emphasis added).

As we have discussed, the 1966 version of "property damage" has been construed to include diminution in value as well as physical injury and loss of use. The definition of property damage incorporated into the standard CGLP form by the 1973 revision and found in the umbrella policy here, was intended to preclude coverage for intangible injuries such as diminution in value. *See* Tinker, 25 Fed'n Ins.Couns.Q. at 224–25; Note, 68 Minn.L.Rev. at 809–13. Courts construing this provision have concluded that it does bar coverage for such damage. *See, e.g., Federated Mutual Ins. Co.*, 363 N.W.2d at 756 (distinguishing *Hauenstein*); *Wyoming Sawmills, Inc. v. Transportation Ins. Co.*, 282 Or. 401, 578 P.2d 1253, 1256–57 (1978) (en banc). *See generally American Home Assurance Co. v. Libbey–Owens–Ford Co.*, 786 F.2d 22, 24–25 (1st Cir.1986). We agree, and conclude that the umbrella policy does not extend coverage to any diminution in value of the building.

### IV.

Finally, we briefly consider coverage under the policies for the consequential damages claimed by Pacific Mutual. Both policies provide coverage for "damages be-

---

**2.** The stipulated facts recite that Campbell Glass "furnished and installed the exterior curtain wall system." Rec., supp. vol. I, doc. 3, at 3. The underlying federal court action likewise asserts that Campbell Glass "furnished and installed" the system. Rec., vol. I, doc. 1, ex. A, at 1.

cause of ... property damage *to which this insurance applies.*" Rec., supp. vol. I, doc. 1, ex. A, at 4; *id.,* ex. B, at 3 (emphasis added). Since the insured's products and installation are *not* property damage to which the insurance applies, any consequential damages caused by such products and installation are not covered. *See American Home Assurance Co.,* 786 F.2d at 26–27; *Federated Mutual Ins.,* 363 N.W.2d at 757.

The district court concluded that the policies at issue covered the cost of replacement materials and the cost of removal and new installation. The Court further concluded that these costs take into account most of the specific damages claimed by Pacific Mutual. Because we hold, contrary to the district court, that these costs are excluded from coverage, and that diminution in value in excess of these costs is covered only by the SMP policy, we remand for further proceedings to allow the district court to redetermine coverage in light of our opinion.

REVERSED AND REMANDED.