## Mazzotta v. Aetna Casualty and Surety Company

*David R. Cohen,* for plaintiff.
*Avrum Levicoff,* for defendant.

WETTICK, *A.J.,* September 29, 1989 — This lawsuit arises out of a $1,500 contract between plaintiff, a painting company, and the owners of a residence. Under the terms of the contract, plaintiff was to paint a portion of the interior of the residence. His responsibilities consisted of purchasing the paint, preparing the surface for painting, and applying the paint.

Sometime after the painting job was completed, portions of the paint began to chip and peel. The apparent cause was that plaintiff had applied latex paint over oil-based paint without proper preparation of the surface to be painted.

The homeowners instituted litigation against plaintiff in which they sought damages of $6,824. The damages consisted entirely of the estimated costs for removing the paint that plaintiff had applied, preparing the surface for painting, and apply-

ing the new paint. The homeowners did not claim that there would be any diminution in the value of their residence once this work was performed.

Plaintiff tendered the homeowners' claim to Aetna Casualty and Surety Company, which provided business liability insurance to plaintiff under a standard comprehensive general liability policy. Aetna refused to provide coverage or a defense on the ground that several exclusions in the insurance policy excluded the homeowners' claim. As a result of the denial of coverage, plaintiff retained his own counsel to defend the action which was eventually settled for $2,800. In the present action, plaintiff has sued Aetna for the amount of this settlement and legal fees and costs of $3,618.14 incurred in defending the action.

Both parties have moved for summary judgment. These motions are the subject of this opinion and order of court.

The insurance policy contains two standard exclusions which Aetna cites in support of its position that the homeowners' claim was not covered under Aetna's policy of insurance with plaintiff. The policy provides that the business-risk coverage provided by the policy does not apply:

"(n) To property damage to the named insured's products arising out of such products or any part of such products.

"(o) To property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof or out of materials, parts or equipment furnished in connection therewith."

Plaintiff contends that these exclusions are not applicable. These exclusions apply only to property damage from plaintiff's products or to work performed by plaintiff. According to plaintiff, the paint is the product which it furnished and its ap-

plication is the work which it performed. The major portion of the homeowners' damage claim did not involve the cost of new paint or the cost of applying the new paint — it involved the cost of repairing the damage to the residence caused by the application of the paint.

Plaintiff's argument would have merit if his work had caused damage to the residence beyond the scope of his work. However, in this case there was no damage to the residence other than to the work that plaintiff performed. The work that plaintiff performed consisted of furnishing the paint, preparing the surface for painting, and applying the paint. The homeowners' claim against plaintiff was limited to the estimated cost of performing only these tasks. Thus, this was a claim for property damage to plaintiff's work arising out of the work which plaintiff had performed and the products which plaintiff furnished.

This construction of exclusions (n) and (o) is consistent with the manner in which the Pennsylvania Supreme Court construed almost identical exclusions in *Gene & Harvey Builders v. Pennsylvania Manufacturers' Assoc.*, 512 Pa. 420, 517 A.2d 910 (1986). That case involved the duty of an insurance company to defend and indemnify its insured, a building contractor, against a lawsuit filed by a homeowner who claimed that his home, constructed by the insured contractor, had become uninhabitable because it was negligently built on land which had subsided. The court held that the claim was excluded from coverage under both the exclusion covering damage to the contractor's product arising out of any part of the product and the exclusion covering damage to work performed by the contractor arising out of any portion of the work. The former exclusion was applicable because:

"[A]ll the claims concern damage to the insured's

product (the house) arising from *a part of the product,* i.e., a builder's duty to be reasonably prudent in the placement of a house. One does not contract for the building of a house in the sky; of necessity, houses must rest on the earth. Assumed is that part of the contractor's work product will be to act prudently in placing the house on the lot. Reasonable inspection of the lot and representing the condition of the lot to the owner are, in short, part of the work of building a house, which is the 'product' of a contractor." *Gene & Harvey Builders, supra.*

The latter exclusion was applicable because:

"[A]ll the negligence assertions in the complaint concern damage to the work (the building of the house, i.e., a building fit for habitation) arising out of any portion of the work — using reasonable care to inspect the ground to see that it is normally sound, filling in holes which were present in the ground, and representing to the homeowner-buyers that the land had or did not have certain characteristics." *Id.*

The same rationale is applicable to the present case. Part of plaintiff's product was the preparation of the surface. Also, all of the assertions in the homeowners' complaint concerned damage to the work — the failure of the paint to adhere properly to the surface. Furthermore, the only damage was to the product which, according to this Supreme Court opinion, would include the preparation of the surface and the application of the paint.

We also find to be persuasive the opinion of the Court of Appeals for the Tenth Circuit in *Hartford Accident & Indemnity Co. v. Pacific Mutual Life Insurance Co.,* 861 F.2d 250 (10th Cir. 1988). In that case, a subcontractor installed a reflective glass wall system which it had furnished to the exterior of a building. This wall system was defective — the window units cracked and broke and the coating surfaces

deteriorated. As a result of these defects, the building suffered physical damage, including cracks and breaks in the concrete floor slabs because of water leakage. The owner undertook a major restoration to correct the problems, including removal of some of the parts of the original system and installation of a replacement wall system outside the defective one. The owner sued the subcontractor. The Tenth Circuit opinion involved the issue of whether the insurance carrier that issued a comprehensive general liability policy to the subcontractor was liable for any of the damages which the owner claimed.

The court held that exclusions almost identical to those in Aetna's policy with plaintiff limited recovery to the diminution in the value of the building in excess of the cost of replacing the wall system. The policy did not cover additional damages because the exclusions covered both the cost of the products that replaced the defective products and the cost of the labor required to replace the defective products. "These costs are clearly encompassed by the exclusions applicable to the insured's products and to materials furnished in connection with work performed by the insured." 861 F.2d at 254.

Plaintiff contends that the fact situation in the present case is almost identical to the fact situation in *Pittsburgh Plate Glass Co. v. Fidelity and Casualty Co. of New York,* 281 F.2d 538 (3d Cir. 1960), where the court, applying Pennsylvania law, found that the standard exclusions did not apply to a claim against Pittsburgh Plate Glass Company for damages resulting from peeling and flaking paint. In that case, Pittsburgh Plate Glass Company sold its paint to the manufacturer of blinds which applied the paint to its blinds as part of its manufacturing process. As a result of customer complaints concerning peeling paint, the manufacturer was com-

pelled to repair the blinds by stripping the paint, cleaning and preparing the surface for repainting, and applying new paint. The *Pittsburgh Plate Glass* opinion and the other opinions which have relied upon this opinion (see, e.g., *Bowman Steel Corp. v. Lumbermens Mutual Casualty Co.,* 364 F.2d 246 (3d Cir. 1966), and *Imperial Casualty and Indemnity Co. v. High Concrete Structures,* 858 F.2d 128 (3d Cir. 1988), are readily distinguishable because the insured was responsible only for providing the defective material — the insured had no responsibility for applying the material. Thus, the claim involved damages to work performed by others.

This distinction formed the basis for the decision in *Hartford Accident & Indemnity Co. v. Pacific Mutual Life Insurance, supra,* which limited the insurance policy's coverage to the diminution in the value of the building in excess of the cost of replacing the products and/or work of the insured:

"Coverage under a CGLP [comprehensive general liability policy] is not intended to extend to ordinary 'business risks,' such as those relating 'to the repair or replacement of faulty work or products.' The policy is not intended to serve as a performance bond or a guarantee of goods or services. Its purpose is to protect the insured from liability for damages to property *other than his own work or property* that is caused by the insured's defective work or product." 861 F.2d at 253. (citations omitted; emphasis in original)

For these reasons, we enter the following

## ORDER OF COURT

On this day, September 29, 1989, upon consideration of both parties' motions for summary judgment, it is hereby ordered that plaintiff's complaint is dismissed and a judgment is entered in favor of defendant.