NUTMEG INSURANCE COMPANY, Plaintiff,

v.

PRO–LINE CORPORATION and IKB Industries (Nigeria), Ltd., Defendants.

Civ. A. No. 3:92–CV–1459–D.

United States District Court, N.D. Texas, Dallas Division.

July 12, 1993.

James H. Moody, III and Dennis L. Roossien, Jr. of Strasburger & Price, L.L.P., Dallas, TX, for plaintiff.

James A. Clutts, Jr. and David C. Wenholz of Godwin & Carlton, P.C., Dallas, TX, for defendant Pro–Line Corp.

Patrick Wright of Yang & Wright, L.L.P., Dallas, TX, for defendant IKB Industries (Nigeria), Ltd.

### MEMORANDUM OPINION AND ORDER

FITZWATER, District Judge.

In this declaratory judgment action, plaintiff Nutmeg Insurance Company ("Nutmeg")

moves for summary judgment. For the reasons set out below, the court grants the motion.

## I

Defendant Pro–Line Corporation ("Pro–Line") is insured under an excess general liability insurance policy (the "Policy") issued by Nutmeg. The Policy obligates Nutmeg to pay the "ultimate net loss in excess of the self-insured retention because of: (1) Bodily injury, (2) Property damage, (3) Personal injury, (4) Advertising injury, or (5) Employee benefits injury." Policy at 1. Defendant IKB Industries (Nigeria), Limited ("IKB") contracted with Pro–Line to supply IKB with hair care products. Because of problems arising from the parties' contract, IKB sued Pro–Line in state court. In the state court action, IKB alleges causes of action for breach of contract and warranty, fraud, constructive fraud, and tortious interference with business relations. Pro–Line forwarded IKB's petition to Nutmeg, who agreed to provide Pro–Line with a defense, subject to a reservation of rights. Thereafter, Nutmeg filed the instant action, seeking a declaration that it has no duty to provide Pro–Line with a defense to the claims asserted in IKB's state court petition and no duty to pay any judgment rendered against Pro–Line based on IKB's claims.

Nutmeg now moves for summary judgment on its claims. IKB and Pro–Line oppose the motion. They contend that IKB's claims against Pro–Line fall within provisions of the Policy, giving rise to a duty to defend. They each assert different grounds for coverage under the Policy. IKB contends it has alleged "personal injury" as defined in the Policy. Pro–Line argues that IKB has alleged "property damage" as defined in the Policy.

## II

■ Nutmeg is entitled to judgment in this action if the court finds that it has no duty to defend the state court action. *See Enserch Corp. v. Shand Morahan & Co., Inc.,* 952 F.2d 1485, 1493 (5th Cir.1992) (duty to defend greater than duty to indemnify or pay). An insurer has a duty to defend its insured if any allegation in the underlying complaint is potentially covered by the policy. *Id.* at 1492. The court looks only to the face of the pleadings and the insurance policy in determining the duty to defend. *See id.* at 1492. "The insurer is under a legal duty to defend if, and only if, the petition alleges facts construing a cause of action within the coverage of the policy." *Snug Harbor, Ltd. v. Zurich Ins.,* 968 F.2d 538, 545–46 (5th Cir.1992) (quoting *Maryland Cas. Co. v. Mitchell,* 322 F.2d 37, 39 (5th Cir.1963)). The court must liberally construe the allegations in the underlying state court pleading, and any doubt about whether the allegations reflect a potential liability must be resolved in favor of the insured. *Terra Int'l v. Commonwealth Lloyd's Ins. Co.,* 829 S.W.2d 270, 272 (Tex.App.1992, writ denied).

## A

The court first considers Nutmeg's motion in light of IKB's response to the motion for summary judgment.

■ IKB contends its state court pleadings allege a "personal injury" as that term is defined in the Policy. In its amended petition, IKB avers that Pro–Line's breach of warranty and fraud have resulted in "the publication by consumers, distributors, and sellers of slanderous, libelous, and disparaging remarks about [IKB]," Am.Pet. at ¶ 12, which has ruined IKB's reputation and created consumer distrust. *Id.* at 12, 14, and 18. As defined in the Policy, "personal injury" means "injury ... that occurs during the policy period and arises out of one or more of the following offenses: ... [o]ral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services...." Policy at 11.

IKB's state pleading does not allege any facts giving rise to Pro–Line's liability for libel or slander. IKB does not allege that Pro–Line published any material that slanders or libels IKB or its products. IKB does not even attempt to allege a cause of action for slander or libel against Pro–Line. Instead, IKB contends *other parties* have published disparaging materials as a result of

Pro–Line's breach of warranty and fraud (causes of action not covered by the Policy). These allegations will not support holding Pro–Line liable for defamation.

■ In order for a defendant to be held liable for slander or libel, there must be an allegation that the defendant made and published the disparaging material. *See Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989) (to sustain defamation action, plaintiff must prove defendant published a statement); *Putter v. Anderson,* 601 S.W.2d 73, 78 (Tex. Civ.App.1980, writ ref'd n.r.e.) (publication of libel by letter requires showing that defendant composed and sent letter). Accordingly, IKB has not alleged facts that would give rise to Pro–Line's liability for libel or slander.

## B

The court next considers Pro–Line's response to the motion for summary judgment.

Pro–Line contends IKB's state court petition alleges claims that are potentially covered by the "property damage" provision of the Policy. "Property damage" is defined as

a. Physical injury that occurs during the policy period to tangible property, including all resulting loss of use of that property; or

b. Loss of use that occurs during the policy period of tangible property that is not physically injured, provided such loss of use is caused by an occurrence during the policy period.

Policy at 12. IKB alleges in its amended petition that it has lost the sales of other IKB products and product lines because of Pro–Line's wrongful conduct. Pro–Line reasons that IKB has alleged the loss of use of tangible property that has not been physically injured because a loss of sales is a loss of use of tangible property (IKB's products and inventory) that has not been physically injured. Stated another way, Pro–Line argues that IKB lost the use of its own property because it was not able to sell it.

■ The court has found no Texas cases that address this precise issue. The court must therefore make an *Erie*-guess as to how the Texas Supreme Court would decide the

question. *See, e.g., Brady v. Blue Cross and Blue Shield of Tex., Inc.,* 767 F.Supp. 131, 133 (N.D.Tex.1991). In coming to its conclusion, the court must adhere to the general principles regarding the construction and interpretation of insurance policies in the state of Texas. Insurance policies are governed by the rules generally applicable to contracts. *National Union Fire Ins. Co. of Pittsburgh v. Hudson Energy Co.,* 811 S.W.2d 552, 555 (Tex.1991). The interpretation of an unambiguous insurance contract is a question of law. *Utica Nat'l Ins. Co. of Tex. v. Fidelity & Casualty Co. of N.Y.,* 812 S.W.2d 656, 661 (Tex.App.1991, writ denied). Moreover, exceptions or limitations on liability are strictly construed against the insurer and in favor of the insured. *Union Fire,* 811 S.W.2d at 555.

Because the Policy terms are unambiguous, the court decides the present issue as a matter of law. One Texas court of appeals has held that "the loss of use of tangible property" does not include economic loss, that is, the loss of initial investments, subscription funds, and profits. *See Houston Petroleum Co. v. Highlands Ins. Co.,* 830 S.W.2d 153, 156 (Tex.App.1990, writ denied). Examining language virtually identical to that provided in the Nutmeg Policy, the Texas court concluded the language in the policy was based on the assumption that tangible property, unlike an economic loss, is generally subject to physical injury or destruction. *Id.* Another Texas court of appeals has concluded the loss of an investment and anticipated profits does not establish "property damage" (loss of use of tangible property) within the meaning of insuring agreements. *See Terra,* 829 S.W.2d at 273.

In *Terra Int'l* the court cites *Hawaiian Ins. & Guar. Co., Ltd. v. Blair, Ltd.,* 6 Haw. App. 447, 726 P.2d 1310 (1986), for its holding that allegations showing diminution in value to an insured's product line do not constitute the "loss of use of tangible property." *Id.* 829 S.W.2d at 273. *Hawaiian Ins.* is the only case to which the court has been directed that has considered an issue substantially similar to the one the court must now decide. *Hawaiian Ins.* is not binding on this court, of course, but the court is free to follow it if

persuaded the Texas Supreme Court would do so.

In *Hawaiian Ins.* the insured argued the insurer had a duty to defend because a potential claim of "property damage" was raised against it. 726 P.2d at 1313. The language in the *Hawaiian Ins.* policy is virtually identical to the relevant Nutmeg Policy provision. *See id.* One of the claims alleged against the insured was that its actions had damaged the value of a third party's product line; there was no allegation in the third party's complaint, however, that it was deprived of the actual use of its products at any time. *Id.* Concluding that the allegation of damage to the value of the product line was an allegation of loss of profits, the court held that "diminution in value" did not constitute "loss of use" within the meaning of the policy provision. *Id.* at 1315.

In interpreting insurance contracts, the court's primary concern is to ascertain and give effect to the intentions of the parties as expressed in the instrument. *Utica Nat'l Ins.*, 812 S.W.2d at 661. Moreover, an insurer is entitled to reflect adequately in the policy the risk being insured and to charge premiums based upon those risks. *Holyfield v. Members Mut. Ins. Co.*, 566 S.W.2d 28, 29 (Tex.Civ.App.1978, writ ref'd n.r.e.). There is no indication in the record that Nutmeg could have anticipated being held accountable for such speculative risks as the loss of sales of products supplied by a third party. This court holds that a Texas court faced with a similar issue would follow the reasoning of the court in *Hawaiian Ins.*

The instant action can be distinguished from *Hawaiian Ins.* in that IKB does not allege "diminution in value" to its product line; rather, it alleges that it has lost the sales of its products. Nevertheless, this still is not an allegation that IKB has been deprived of the actual use of its products. IKB's allegations amount to a claim for an economic loss: the loss of profits on the sales of its products.

Pro–Line relies on cases where courts have found that the term "property damage" includes damage to tangible property that has been damaged in value or made useless irrespective of physical injury to the property. In *Travelers Ins. Cos. v. Penda Corp.*, 974 F.2d 823, 826 (7th Cir.1992), the insurer contended it did not have a duty to defend the insured who supplied defective sheets that were included in books. Because of the defective sheets, the books could not be sold and had to be replaced. *Id.* at 829. The Seventh Circuit held that it was possible that "property damage" occurred under the policy because of the "loss of use" of the books. *Id.* at 833. In *Pittway Corp. v. American Motorists Ins. Co.*, 56 Ill.App.3d 338, 13 Ill.Dec. 244, 246–47, 370 N.E.2d 1271, 1273–74 (1977), the court held that the inclusion of a defective valve into a finished product caused property damage to the product of a third party to the extent that the market value of the final product was diminished. The court does not think the Texas Supreme Court would apply these cases to the Nutmeg Policy. These cases involved defective components that were so integral that the defect necessarily resulted in damage to the completed product. In the instant action, however, the hair care product supplied by Pro–Line was itself a completed product, not a component of another product.

The court concludes that under Texas law the loss alleged by IKB does not constitute "property damage" under the Policy. The court therefore holds that Nutmeg is entitled to judgment as a matter of law that it does not have a duty to defend Pro–Line in IKB's state court action.

\*　　\*　　\*　　\*　　\*　　\*

Nutmeg's summary judgment motion is granted. The court has filed a judgment today.\*

SO ORDERED.

---

\* On July 6, 1993, after this opinion was written, but before it was filed, Nutmeg and Pro–Line

each filed motions to amend. According to the certificate of conference, Nutmeg's motion is unopposed by Pro–Line; IKB's counsel was unavailable to confer. Pro–Line's motion is unopposed. Nevertheless, the court denies both motions. The court has expended considerable time deciding the case on the present pleadings. It completed its opinion prior to July 6. Where, as here, Pro–Line's motion follows the filing of Nutmeg's summary judgment motion, the court may properly deny leave to amend. *See, e.g., Overseas Inns S.A.P.A. v. United States,* 911 F.2d 1146, 1150–51 (5th Cir.1990). Nutmeg, on the other hand, had ample opportunity to seek attorney's fees before moving for summary judgment. The motions to amend are therefore denied.