66 F.3d 338
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 BANGERT BROTHERS CONSTRUCTION COMPANY, INC., Plaintiff-Appellant,
v.
AMERICAS INSURANCE COMPANY, Allendale Mutual Insurance
Company, Defendants-Appellees.
 No. 94-1412.
 United States Court of Appeals, Tenth Circuit.
 Sept. 11, 1995.
 
 1
 Before KELLY and SETH, Circuit Judges, and KANE,** District Judge.
 
 ORDER AND JUDGMENT[1]
 
 2
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 3
 Plaintiff Bangert Brothers Construction Co., Inc. appeals from an order of the district court granting summary judgment for defendants Americas Insurance Co. and Allendale Mutual Insurance Co. Bangert Brothers, the general contractor for construction of runway 17L/35R at the Denver International Airport (DIA), commenced an action against Americas, the provider of a general liability policy, and Allendale, the provider of a builder's risk policy, seeking defense and indemnity by the insurers for repair and replacement of parts of the runway concrete rejected by the City and County of Denver. The district court determined that exclusions to the insurers' policies precluded coverage and therefore granted summary judgment in favor of the insurers. We affirm.
 
 
 4
 After Denver hired Bangert Brothers to construct runway 17L35R, Bangert Brothers subcontracted much of the concrete work.[2] During construction, Denver discovered clay balls[3] and cracking in various sections of the runway and directed Bangert Brothers to remove and replace these sections. Bangert Brothers did so and submitted claims to the insurers, who had provided policies as part of an Owner Controlled Insurance Program provided by Denver. Americas did not respond, and Allendale denied the claim.[4]
 
 
 5
 Bangert Brothers then commenced an action in state court, and the insurers removed it to federal district court on the basis of diversity jurisdiction. The district court determined that Bangert Brothers' use of subcontractors did not relieve it of any obligation under the construction contract and that the insurance policies were not performance bonds.[5] The district court granted summary judgment after concluding, without analysis of the issues, that exclusions for defective workmanship under both policies precluded coverage.
 
 
 6
 We review the district court's summary judgment decision de novo. Regional Bank of Colo., N.A. v. St. Paul Fire & Marine Ins. Co., 35 F.3d 494, 496 (10th Cir.1994). "Summary judgment is appropriate if 'there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law.' " Hagelin for President Comm. v. Graves, 25 F.3d 956, 959 (10th Cir.1994)(quoting Fed.R.Civ.P. 56(c)), cert. denied, 115 S.Ct. 934 (1995). The facts and their reasonable inferences must be construed in a light most favorable to the nonmoving party. Blue Circle Cement, Inc. v. Board of County Comm'rs, 27 F.3d 1499, 1503 (10th Cir.1994). In diversity cases, we follow Colorado law and interpret the policies as a Colorado court would. Regional Bank of Colo., 35 F.3d at 496.
 
 AMERICAS' POLICY
 
 7
 Bangert Brothers contends for several reasons that the district court erred in granting summary judgment for Americas. It first argues that the district court failed to recognize that Americas is estopped from arguing that its own unique manuscript policy provides less coverage than a standard 1986 Insurance Services Office, Inc. general contractors liability (ISO CGL) policy. To support this argument, Bangert Brothers points to Americas' warranty to Denver that its manuscript policy was broader than the 1986 ISO CGL policy. Nothing in the appendices, however, indicates that any specific clause or exclusion provided broader coverage than that provided in the 1986 ISO CGL policy. This vague warranty is insufficient to overcome the language of the policy which we discuss below. We conclude Bangert Brothers' estoppel argument is without merit.
 
 
 8
 Bangert Brothers next argues that having a performance bond was irrelevant. We disagree. The Americas policy is a third-party general liability policy, which was to protect Bangert Brothers from liability for damages to property other than its own caused by its defective work or product. See Hartford Accident & Indem. Co. v. Pacific Mut. Life Ins. Co., 861 F.2d 250, 253 (10th Cir.1988); see also Fireguard Sprinkler Sys., Inc. v. Scottsdale Ins. Co., 864 F.2d 648, 650 (9th Cir.1988)(liability insurance should not be performance bond for general contractor because general contractor controls its own work and should pay for losses caused by its own defective work). Thus, the Americas policy did not "serve as a performance bond or a guaranty of goods or services." Hartford Accident & Indem., 861 F.2d at 253.
 
 
 9
 Bangert Brothers next argues that the Americas' policy provides coverage for the losses incurred. The district court did not address this issue.[6] The insuring agreement states that Americas will "pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of: ... property damage, caused by an occurrence." Appellant's app. I at 60. Americas counters that the policy provides no coverage because there was no third-party property damage caused by an occurrence.
 
 
 10
 The interpretation of an insurance policy is a matter of law. Union Ins. Co. v. Houtz, 883 P.2d 1057, 1061 (Colo.1994). To determine the meaning of an insurance policy, courts look to the intent of the parties as evidenced by the language of the policy. Simon v. Shelter Gen. Ins. Co., 842 P.2d 236, 239 (Colo.1992). The meaning of an insurance contract is to be determined "by reference to what meaning a person of ordinary intelligence would attach to it." Id. at 240; see Regional Bank of Colo., 35 F.3d at 497 (meaning of terms of policy to be construed in light of reasonable expectations of policyholder); American Family Mut. Ins. Co. v. Johnson, 816 P.2d 952, 953 (Colo.1991)(unambiguous contract provisions construed according to plain meaning).
 
 
 11
 Bangert Brothers believes that its agreement to replace the runway panels was a legal obligation to pay damages. This argument has no merit; there were no costs due to an occurrence causing damage to another's property. An occurrence does not include the normal expected consequences of poor workmanship. Reliance Ins. Co. v. Mogavero, 640 F.Supp. 84, 86 (D.Md.1986).
 
 
 12
 According to Bangert Brothers it is indisputable that the damage to the runways is property damage. The Americas policy defines property damage as "injury to or destruction of property ... or ... loss of use of property which has not been injured or destroyed provided such loss of use is caused by an occurrence." Appellant's app. I at 67. Because the policy does not state that property damage must be to property of a third party or to tangible property, Bangert Brothers believes that there is direct property damage to the runway and "diminution in value" property damage, whereby the value of the DIA project as a whole was reduced. Even if the Americas policy includes "diminution in value" damages, which we do not decide, the policy excludes coverage for damage to Bangert Brothers' own work, products, and materials. See Hartford Accident & Indem., 861 F.2d at 253. Any recoverable "diminution in value" would be limited to an amount exceeding the cost to repair and replace Bangert Brothers' defective work. See id. In this case, the only damage was to the runway due to cracking and the omission of a scalper screen, and the only costs of repair and replacement related to the defective runway panels. Bangert Brothers failed to assert any direct damage or "diminution in value" beyond the defective runway panels.
 
 
 13
 The remainder of Bangert Brothers' arguments concern policy exclusions for defective goods or products, faulty workmanship, and defective performance. Even if we were to conclude the Americas policy provides coverage, the policy exclusions defeat coverage.
 
 
 14
 Exclusions must be narrowly construed, Hartford Accident & Indem., 861 F.2d at 253, and exclusionary clauses must be drafted in clear and specific language. American Family Mut. Ins., 816 P.2d at 953. To obtain the benefit of an exclusion, an insurer must establish that it applies and that it is not subject to any other reasonable interpretation. Id.
 
 
 15
 The defective goods or products exclusion excludes coverage for "the cost of repairing or replacing any defective goods or products manufactured, constructed, altered, repaired, serviced, treated, sold, supplied or distributed by the Insured or any defective part or parts thereof." Appellant's app. I at 62. Bangert Brothers argues that this exclusion does not apply because it provided services, not goods or products. Even if its work was a good or product, Bangert Brothers believes the policy's definition of property damage is broad enough to include "diminution in value" to the entire DIA project. Bangert Brothers seeks to recover for the cost of replacing its own defective work on the runway which was manufactured, constructed, sold and supplied to Denver. Bangert Brothers did not merely provide services; it also provided a product in the form of a concrete runway, which was in part rejected. Again, under the circumstances of this case, we reject the "diminution in value" argument. We conclude the defective goods and products exclusion excludes coverage.
 
 
 16
 The faulty workmanship exclusions exclude coverage for "the cost of making good any faulty workmanship for which the Insured, his employees, contractors or sub-contractors may be liable, but this exclusion shall not apply to ... property damage arising out of such faulty workmanship," and "property damage ... the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the Insured." Appellant's app. I at 62. Bangert Brothers argues that there are no facts supporting the district court's apparent factual finding that there was faulty workmanship, and Americas failed to meet its responsibility of establishing the factual cause of the property damage. Bangert Brothers further contends the faulty workmanship exclusion does not apply to faulty suppliers' materials, and the cracking problem most likely was caused by problems with the supplied concrete ingredients. Also, it maintains the exclusion does not exclude damages its subcontractors or suppliers caused to Bangert Brothers' own work. Bangert Brothers' complaint and the undisputed facts, however, established that the contract specifications were not complied with, that Kiewit-Western, a subcontractor, failed to use a scalper screen when batching the concrete, resulting in the voids, and that an improper mixture of concrete ingredients caused the cracking. The policy language indicates Americas did not intend to cover losses caused by either Bangert Brothers or its subcontractors. See Fireguard Sprinkler Sys., 864 F.2d at 650-51. Bangert Brothers was responsible for the entire contract, including the parts performed by subcontractors and suppliers. Bangert Brothers does not allege that any third party property was damaged by its work.
 
 
 17
 Bangert Brothers also argues that the term "workmanship" is ambiguous, because it can mean either the actual work produced or craftsmanship, and, therefore, the exclusion must be construed to provide coverage. If the exclusion applies at all, Bangert Brothers believes that it should apply to the manner in which the work was done. The terms in an insurance contract are ambiguous when they can reasonably be interpreted in more than one way. Hecla Mining Co. v. New Hampshire Ins. Co., 811 P.2d 1083, 1091 (Colo.1991). We need not determine, however, whether the exclusion is ambiguous, because no matter which interpretation is applied, we reach the same result, that the exclusion precludes coverage. See Regional Bank of Colo., 35 F.3d at 497. If faulty workmanship means a flawed product, the clay ball and cracking problems are excluded because they are flaws in part of the runway. Likewise, if faulty workmanship means faulty craftsmanship, coverage is also excluded due to failure to use a scalper screen and proper ingredients in the concrete.
 
 
 18
 Finally, with regard to the faulty workmanship exclusion, Bangert Brothers argues that the exception to the exclusion limits the exclusion to the smallest faulty component of the work itself, and any resulting damage remains covered. Because, according to Bangert Brothers, the component responsible for the damage is an unresolved issue of material fact, whether the exclusion applies cannot be decided by summary judgment. This argument has no merit because there was no damage other than to the runway. We conclude the faulty workmanship exclusions exclude coverage.
 
 
 19
 The defective performance exclusion precludes coverage for "property damage arising out of improper or inadequate performance, design or specification but this exclusion shall be deemed not to apply to ... property damage insured hereby resulting therefrom." Appellant's app. I at 63. Bangert Brothers first contends the exception to the defective performance exclusion renders the exclusion meaningless because the policy language is ambiguous. Also, Bangert Brothers argues that it did not cause any property damage due to defective performance and the exclusion does not expressly state that it applies to work performed by subcontractors and suppliers. At the least, Bangert Brothers maintains that the factual issue concerning who is responsible for the clay ball and cracking problems precludes summary judgment. Finally, Bangert Brothers argues that the defective performance exclusion does not apply to physical breakdowns. We reject these arguments and conclude this exclusion also excludes coverage.
 
 ALLENDALE'S POLICY
 
 20
 Because Allendale concedes that Bangert Brothers is covered under the insuring obligations of its builder's risk policy, only the applicability of four exclusions is argued on appeal. The four exclusions concern faulty workmanship, cracking, contamination, and manufacturing or processing.
 
 
 21
 The faulty workmanship exclusion excludes coverage for "faulty workmanship, material, construction or design from any cause, unless physical damage not excluded by this Policy results, in which event, this Policy will cover only such resulting damage." Appellant's app. III at 871. As with the Americas policy, Bangert Brothers argues that there is no factual evidence of faulty workmanship and the district court merely assumed there was faulty workmanship. It is undisputed that the runway did not meet contract specifications, and that faulty materials were used to construct the runway. The district court determined that failure to use a scalper screen was faulty workmanship. Also, by Bangert Brothers' apparent admission in its complaint, the concrete cracked due to an improper mixture of ingredients.
 
 
 22
 Even if the cracking and clay ball problems are faulty workmanship, Bangert Brothers contends that under the "efficient moving cause" rule it is covered if the underlying causes of the cracking or voids are covered perils. Until the actual causes of the cracking and voids are determined, Bangert Brothers believes that it is impossible to determine whether there is coverage. This argument is without merit as the exclusion excludes "faulty workmanship, material, construction or design from any cause ". Id. (emphasis added). Thus, it is irrelevant what actually caused the cracking and voids.
 
 
 23
 Bangert Brothers also argues that the resulting damage exception to the faulty workmanship exclusion requires coverage because the voids and cracks are the resulting damages, that the faulty workmanship exclusion is ambiguous and should be interpreted as craftsmanship in order to afford coverage, and that Allendale's interpretation of the exclusion renders the insurance promise illusory. We reject these arguments. There was no resulting damage not excluded, the cracking and clay ball contamination represented the faulty workmanship, and, as is discussed below, the cracking and clay ball contamination are excluded. The exclusion properly applied because Bangert Brothers' sole claim is for the cost of repairing and replacing its own deficient work. See Allianz Ins. Co. v. Impero, 654 F.Supp. 16, 18 (E.D.Wash.1986). Bangert Brothers had a duty to complete the runway in accordance with the plans and specifications of its contract with Denver, and it cannot recover under an all-risk policy for the costs of making good its faulty work. See id. An insurer will not be held "liable beyond the scope of risks which have been clearly covered in the insurance policy." Kane v. Royal Ins. Co., 768 P.2d 678, 683 (Colo.1989). We conclude the faulty workmanship exclusion excludes coverage.
 
 
 24
 The contamination exclusion excludes coverage for "contamination including but not limited to pollution, shrinkage or change in color, flavor, texture or finish, unless such damage directly results from other physical damage not excluded by this Policy." Appellant's app. III at 871. Bangert Brothers contends this exclusion does not apply first because the clay balls are not contamination since the specifications for the runway permit clay in the completed panels. Although some clay is permitted by the specifications, the amount of clay in the form of clay balls caused by failure to use a scalper screen was contamination, rendering parts of the runway unfit. Cf. McQuade v. Nationwide Mut. Fire Ins. Co., 587 F.Supp. 67, 68 (D.Mass.1984)(contamination due to excess amount of chemical used by exterminator); Auten v. Employers Nat'l Ins. Co., 722 S.W.2d 468, 469-70 (Tex.Ct.App.1986)(contamination due to misapplication of chemical and amount of chemical used by exterminator), writ denied, 749 S.W.2d 497 (Tex.1988). Thus, the loss caused by contamination was excluded from coverage.
 
 
 25
 Also, Bangert Brothers contends that the clay balls resulted from an "efficient moving cause" not excluded by the builder's risk policy. According to Bangert Brothers, the entering of clay balls into the concrete caused nonexcluded physical damage. Here, the contamination resulted from failure to use a scalper screen and there was not any physical damage not excluded by the policy. We conclude the contamination exclusion excludes coverage.
 
 
 26
 The cracking and settling exclusion excludes "settling, cracking, shrinking, bulging, or expansion of pavements, foundations, walls, floors, or ceilings; unless physical damage not excluded by this Policy results, in which event, this Policy will cover only such resulting damage." Appellant's app. III at 872. Bangert Brothers argues the "efficient moving cause" rule avoids application of the exclusion, because the exclusion applies only to normal cracking not to unexpected cracking. The "efficient moving cause" rule "states that in evaluating a loss, where there is concurrent causation, the 'efficient cause' (the one that sets others in motion) is the cause to which the loss is to be attributed." Redstone Corp. v. Fire Ins. Exch., 715 F.Supp. 300, 301 (D.Colo.1989). The "efficient moving cause" rule, however, yields to the language of the insurance policy. See Kane, 768 P.2d at 684-85. Here, all of the losses from cracking were due to excluded faulty workmanship, use of improper ingredients for the concrete. Because the cause of the loss was excluded, the "efficient moving cause" rule is irrelevant. Also, nothing in the policy indicates that the exclusion applies only to normal cracking. We conclude this exclusion also excludes coverage.
 
 
 27
 The final relevant exclusion, the manufacturing or processing exclusion, excludes
 
 
 28
 loss attributable to manufacturing or processing operations which result in damage to stock or materials while such stock or materials are being processed, manufactured, tested or otherwise being worked upon; all unless physical damage not excluded by the Policy results, in which event, this Policy shall cover only such resulting damage.
 
 
 29
 Appellant's app. III at 871. Bangert Brothers argues that the manufacturing or processing exclusion does not apply because there was no manufacturing or processing operation and there was no damage to stock or materials. According to Bangert Brothers' complaint, the concrete was manufactured and the omission of the scalper screen resulted in clay balls in the concrete. Thus, this exclusion also applies.
 
 
 30
 We conclude the district court properly granted summary judgment in favor of the insurers. Accordingly, the judgment of the United States District Court for the District of Colorado is AFFIRMED. Bangert Brothers' request for oral argument is DENIED. Americas' January 13, 1995, motion to substitute sur-reply brief and withdraw supplemental appendix is GRANTED. Americas' January 4, 1995, motion for leave to file sur-reply brief and supplemental appendix is DENIED as moot. Bangert Brothers' February 3, 1995, motion for leave to respond to the sur-reply brief is GRANTED.
 
 
 
 **
 Honorable John L. Kane, Jr., Senior District Judge, United States District Court for the District of Colorado, sitting by designation
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 Bangert Brothers subcontracted with CSI Trucking, Inc. to supply and transport concrete. CSI subcontracted with Kiewit-Western Inc. to manufacture the concrete at a portable batch plant at DIA. After the concrete was manufactured and transported, Bangert Brothers formed the concrete into pavement
 
 
 [3]
 After the concrete cured, the clay balls became voids, reducing the strength of the runway pavement
 
 
 [4]
 Bangert Brothers, the subcontractors, and concrete suppliers are parties in a separate action to determine who is responsible for the cracking and clay ball problems
 
 
 [5]
 The district court incorrectly stated that each insurer provided third-party general liability insurance and that the policies were not intended to serve as performance bonds or builder's risk policies. See Order Granting Summary Judgment filed June 21, 1995, at 3. There is no dispute, however, that the Allendale policy was a builder's risk policy
 
 
 [6]
 We do not assume that the district court's failure to address the issue suggests the district court found coverage