DCB CONSTRUCTION COMPANY,
INC., Plaintiff,

v.

TRAVELERS INDEMNITY COMPANY
OF ILLINOIS, and Travelers Indemnity Company of America, Defendants.

No. CIV.A. 02–K–452.

United States District Court,
D. Colorado.

Sept. 27, 2002.

Thomas N. Alfrey, Trrece, Alfrey, Musat & Bosworth, P.C., Denver, CO, for Plaintiff.

Kevin F. Amatuzio, Steven Gregory Greenlee, Montgomery, Kolodny, Amatuzio & Dusbabek, LLP, Denver, CO, for Defendants.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

This is an insurance coverage declaratory judgment action, before me on cross-motions for summary judgment. Plaintiff, dcb Construction Company ("dcb"), was the contractor on an airport hotel construction project, and seeks coverage under general liability and umbrella policies issued by Defendants (collectively, "Travelers") for the cost of tearing down and replacing hotel room walls originally constructed in accordance with architects' plans but rejected by the owner as not being up to contract specifications. The action was originally brought in state

court, but was removed by Travelers to this court.

At issue is the reconstruction of guest room and corridor walls in three completed airport hotels after the owners discovered the walls failed to meet contract specifications for sound transmission, and whether this failure constitutes "property damage" caused by an "occurrence" for which general liability coverage under dcb's Comprehensive Commercial General Liability Insurance Policy ("CGL") is available. An "occurrence" under the CGL is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." According to dcb, the continuous and unintended exposure to excessive sound transmissions through the walls constituted an "occurrence" that rendered the walls "damaged" within the meaning of the policy's coverage agreement, and contends it purchased an additional "products-completed operations hazard" endorsement that negated the operation of certain policy exclusions into which the "occurrence" would otherwise fall.

Travelers challenges dcb's "tortured" characterization of the acoustically challenged walls as constituting property "damaged" in an "accident," and denies any covered "occurrence" ever took place. Travelers argues that under dcb's own version of the facts, the construction was performed exactly according to design and the completed walls were perfectly functional; the walls were rejected simply because they did not muffle sound to the contractually required specifications of the owners.

Properly constructed walls cannot be viewed as "property damage" and the design choice of dcb and its architects cannot be viewed as an "accident" simply because the design did not live up to the owners' expectations. According to Travelers, the problem is one of economic loss resulting from a failure to perform up to project specifications, not physical damage from an accident.

■ The risk that an owner might reject performance as inadequate is a "business risk" allocated by parties in contract, and is insured by a performance bond, not general liability insurance intended to provide coverage for injuries or damage resulting from "accidents." Travelers relies on *Bangert Bros Constr. Co., Inc. v. Americas Ins. Co.*, 888 F.Supp. 1069 (D.Colo. 1995) (Weinshienk, J.), *aff'd* 66 F.3d 338, 1995 WL 539479 (10th Cir.1995)(unpublished decision), to support its position and urges me to enter judgment in its favor as a matter of law.

■ The operative facts are stipulated. After owners required dcb to tear apart and rebuild the guest room- and corridor walls in each of three airport hotels dcb constructed for them, they filed claims against dcb in an arbitration seeking delay and lost profit damages.[1] Dcb reported the claims to Travelers under the CGL and Travelers denied coverage for defense or indemnity. Travelers argued first that the sound transmission failure was not an "accident" under the policy and second, that even if it were, the claimed damage

---

1. Dcb argues the inclusion of a claim for "negligence" in the owners' arbitration complaint is dispositive of the coverage issue. Travelers responds that the owners' characterization of their claim is "irrelevant" to determining whether Travelers has a duty to defend under the CGL. Travelers argues it is the factual allegations of a complaint that determines whether a duty to defend arises,

not the legal theories or causes of action the underlying plaintiff purports to assert. Defs.' Resp. Opposition to Mot. Summ. J. at 1 (citing *Gerrity Co., Inc. v. CIGNA Property & Cas. Ins. Co.*, 860 P.2d 606 (Colo.App.1993)). I agree, and given the nature of the relief sought by the owners, it is clear the arbitration complaint sounded in contract, not tort.

elements were exempt from coverage under CGL exclusion provisions h, k and l.

*Whether a Covered "Accident" is Present.*

In my view, Travelers has the better argument on the question of whether a covered "accident" or "occurrence" is present here and dcb's attempts to distinguish *Bangert* are unpersuasive.[2] The general rule that the rejection of performance is a business risk to be allocated by the parties in contract and not a risk covered by liability insurance is sound and was recognized as the law in Colorado by Judge Weinshienk in Bangert at 888 F.Supp. 1069, 1072. Although the case cited by Judge Weinshienk in support of her position, *A. D. Irwin Invest., Inc. v. Great American Ins. Co.,* 28 Colo.App. 570, 475 P.2d 633, 635 (1970), is distinguishable (the property damage in *Irwin* was held to fall outside the general liability provision because it occurred "over a continued period of time from the gradual accumulation of condensate" and Traveler's policy specifically defines "accident" to include continuous exposure) it does support the conclusion reached. The Court of Appeals in *Irwin* characterized that case as presenting a breach of contract by the insured in designing and installing an air conditioning system, and concluded that Great American did not, "by its contract of liability insurance, become a guarantor of perfect performance." 28 Colo.App. 570, 475 P.2d 633. Here, by analogy, we have a situation where dcb, through its subcontractor, breached its contract to provide owners with hotel walls that met certain noise conductivity specifi-

cations. Dcb's efforts to turn that breach into a covered "accident" under the general liability insurance policy by bootstrapping on its subcontractor's "negligence" in designing the walls contrary to specifications are unavailing. Dcb failed to perform under the contract to the owner's specifications and Travelers, as a matter of Colorado law, cannot, through its general liability coverage, be made a guarantor of that performance. Dcb's remedy, if any, is against the architect.

I agree there was no covered "accident" under the general liability policy and Travelers is entitled to judgment as a matter of law on that threshold issue alone. Because the nonconforming walls at issue clearly fall within specific exclusions to coverage under the policy as well, the exclusions form an alternative basis for granting Travelers's Motion for Summary Judgment.

*Exclusions h, k & l.*

Even assuming, *arguendo*, that a covered "accident" could be said to exist under the facts alleged by dcb, Travelers asserts there are at least three clear and unambiguous exclusions in the policy that exclude coverage in this case.[3] I am unconvinced exclusions h or l would apply, but agree exclusion k would operate to exclude the "occurrence" alleged here from coverage in this case.

Exclusion h provides coverage is *not* contemplated for "property damage" to "that particular part of any property . . .

---

2. For example, dcb states at p. 2 of its Response to Travelers' Motion for Summary Judgment that *Bangert* is "unpersuasive" because it is an "unpublished" decision and addressed neither "the exclusions asserted [by Travelers] here or a products completed operations endorsement." The district court's opinion in *Bangert* (which is the only decision necessary to Travelers's argument) *is,* in fact, a published decision (only the Tenth Circuit's

opinion affirming it is not) and it is being invoked not for its analysis of exclusions or endorsements, but for the proposition cited.

3. These exclusions, like the general insuring agreement itself, are excerpted at pp. 3–4 of Defendant's Opening Brief, and are set forth in full at Exhibit A–1, attached to Plaintiff's Motion for Summary Judgment.

[o]n which you or any contractor or subcontractor working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations." Because the operations were arguably complete at the time of the purported "accident," exclusion h may or may not be applicable in this case. Exclusion l applies to recalls of products, work or impaired property, and provides that coverage is also excluded for "damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, *repair, replacement,* adjustment, *removal* or disposal of (1) 'your product'; (2) 'your work'" or (3) 'impaired property'; [i]f such product, work, property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it." *See* Defs.' Op. Br. at pp. 3–4, 475 P.2d 633 (excerpting policy which can be seen in full at Ex. A–1 of Pl.'s Mot. Summ. J.) Because the facts of this case do not fall within what is likely understood to be a "recall" scenario, I make no finding on the applicability of exclusion l.

■ Exclusion k applies to "damage to impaired property or property not physically injured," and provides coverage is not contemplated for damage to property that is impaired or "has not been physically injured arising out of . . [a] defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work' or . . . [a] delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms." Dcb undertakes to distinguish this exclusion by denying the walls were unimpaired or not physically damaged at the time dcb was forced to replace them, and argues the

walls were, in fact, physically damaged at the time of their replacement as a result of the "continuous exposure to sound transmissions." I find this characterization strained and unpersuasive and conclude exclusion k would apply to exclude coverage in this case.

### Effect of "Products–Completed Operations Hazard" Protection.

Dcb spent substantial time in its briefs and at oral argument arguing the existence of "products-completed operations hazard" protection under the CGL contradicts the exclusions raised and renders them ambiguous and therefore ineffective to exclude coverage under the policies. Dcb claims it paid an extra premium for such protection, which negated these exclusions and extended its coverage to its completed operations.

Travelers discounts dcb's completed operations argument as being premised on a "fundamental" misreading of the policy. According to Travelers, the hazard is *not* a substantive grant of "completed operations coverage" but an exception to exclusion h's exclusion of work that must be restored or replaced because "your work" was incorrectly performed. Its purpose is to extend indemnity protection up to a certain amount (here, $2,000,000) for completed operations otherwise falling within the exclusion set forth in exclusion h. Because I do not rely on exclusion h to reach my conclusions herein, the argument is largely academic.

The only reference to "products-completed operations hazard" in the CGL is in exclusion h and in the definitions section of the primary policy. *See* Pl.'s Mot. Summ. J., Ex. A–1 at p. 3 of 14 and p. 13 of 14, 475 P.2d 633.[4] To the extent dcb relies on

---

4. It does also appear in the "Coverage and Limits of Insurance" section at page 1 of 1 of Ex. A–1, where it says the "Products–Com-

pleted Operations Aggregate Limit" is $2,000,000.

these references to argue it bargained separately for a completed operations *endorsement* that extends coverage beyond the exclusions that might otherwise apply, I agree dcb's analysis is premised on 1960s era CGL policy language and caselaw that no longer applies in 2002. *See Martinez v. Hawkeye–Security Ins. Co.*, 195 Colo. 184, 576 P.2d 1017 (1978)(completed operations "coverage" may be purchased and would extend coverage to completed operations). General liability carriers continually revise policy language to eliminate or reduce risks allocated to them by the courts and the "product-completed operations hazard" is likely no exception.

I agree the $2,000,000 aggregate completed operations hazard limitation in the CGL at issue means "nothing more than this sum is the greatest amount for which the policy could respond for claims falling within the exception to [exclusion h]." Travelers Resp. to Mot. Summ. J. at 7. Dcb concedes such claims must still fall within the original coverage grant and the completed operations definition before coverage could lie, and my finding that no covered "occurrence" took place in this case disposes of dcb's completed operations hazard argument in this case.

Plaintiff's Motion for Summary Judgment is DENIED. Defendants' Cross–Motion for Summary Judgment is GRANTED. Judgment shall be entered for Defendants, with the parties to bear their own costs.